## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**KABONI SAVAGE**

Register #58232-066
USP Florence ADMAX
5880 CO-67
Florence, CO 81226

        *Plaintiff,*

   v.

**UNITED STATES DEPARTMENT OF JUSTICE**

**PAM J. BONDI**, *in her official capacity as the Attorney General of the United States*

950 Pennsylvania Ave NW
Washington, DC 20530

**ASHLEY DUGGER**, *in her official capacity as the Director, Office of Enforcement Operations*

**JENNIFER A.H. HODGE**, *in her official capacity as Deputy Assistant Attorney General*

1301 New York Avenue NW
Washington, DC 20530

        *Defendants.*

**CIVIL ACTION NO:**  25-3664

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Kaboni Savage files this Complaint to challenge his unlawful and unconstitutional treatment by officials of the United States Department of Justice ("DOJ") in Washington, D.C., and alleges as follows:

## INTRODUCTION

1.      For 18 years, DOJ, the Attorney General, and her subordinates ("Defendants") have completely forbidden Mr. Savage, a federal prisoner, from having any communication with numerous family members and longtime, close friends.  Since at least 2015, Defendants have, without articulating any reason and without any meaningful process, denied numerous requests from Mr. Savage to engage in such communications.

2.      In 2007, Defendants placed Mr. Savage under "Special Administrative Measures" ("SAMs") and have renewed them annually ever since, most recently in January 2025.  SAMs are an extraordinary form of communications restrictions imposed on just a few dozen federal prisoners, mostly terrorists or spies.  *See* 28 C.F.R. § 501.3.  Defendants initially imposed SAMs on Mr. Savage because of several homicides he was ultimately convicted of soliciting from the federal jail in Philadelphia in the early 2000s.  *See United States v. Savage*, 970 F.3d 217 (3rd Cir. 2020).  The SAMs imposed on Mr. Savage dramatically curtail his contact with the outside world. They permit him to communicate with only 11 preapproved individuals outside of his legal team, of whom four are minor children who cannot directly contact Mr. Savage.  Further, Mr. Savage's SAMs status limits him to no more than two to four 15-minute telephone calls a month and minimal correspondence.  The SAMs also require that officials contemporaneously monitor and record those calls and any visits, and pre-screen and censor his mail.  Visitors are restricted to Mr. Savage's SAMs contacts, and all visits are tightly regulated.

3.      For almost a decade, the list of Mr. Savage's approved social contacts remained at just seven people:  Mr. Savage's older sister (who passed away in April 2023), her two children, his own three children, and the mother of one of his three children.[1]  Over the years, Mr. Savage has repeatedly asked to expand the list to include additional family members and lifelong friends. Defendants' repeated denials have been wholly conclusory, issued without explanation and without any apparent assessment of the appropriateness of the requests.  In 2024, following Mr. Savage's initial district court complaint, the DOJ added four additional contacts to Mr. Savage's SAMs, all of whom are young children.  However, nine other individuals were denied without explanation.

4.      As a result of Defendants' actions, Mr. Savage is not allowed to communicate, in any way, with the mothers of one of his children, two daughters-in-law, his nephew, and extended relatives and close friends he has known for years.  These requested contacts have nothing in their backgrounds that justifies denying Mr. Savage contact with them, and there is no evidence that Mr. Savage's relationships with them would create a risk of violence or bodily harm.  Moreover, adding these individuals to Mr. Savage's contact list would not increase the total number of his allotted monthly letters, calls, or visits.  Thus, the relief sought would not lead to a greater burden on the resources of the DOJ or any other governmental entity.

5.      Defendants repeated, unexplained, and perfunctory rejection of Mr. Savage's annual requests to add individuals to his list of approved SAMs contacts over the past decade violates Mr. Savage's rights under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA") and the First Amendment to the United States Constitution.  Defendants' actions violate

---

[1]      The SAMs applicable to Mr. Savage allow him to also have contact related to his legal proceedings with his attorneys and other pre-approved members of his legal team.

the APA because they violate DOJ's own regulations and are, therefore, "arbitrary, capricious, an abuse of discretion, and not in accordance with law." Defendants' actions also deprive Mr. Savage of his First Amendment rights to free speech, free association, and familial association. Mr. Savage requests that this Court declare Defendants' actions unlawful and enter an injunction requiring Defendants to grant Mr. Savage's requests to expand his SAMs contact list to include the individuals listed in Section C below, or in the alternative, require that Defendants revisit Mr. Savage's request to expand his contact list, apply the proper legal standard in evaluating that request, and provide a rationale for denying Mr. Savage's requests for additional SAMs contacts consistent with that standard.

## PARTIES

6.    Plaintiff Kaboni Savage is in the custody of the United States Bureau of Prisons ("BOP"), confined at the Administrative Maximum Facility in Florence, Colorado ("ADX Florence"). President Biden commuted Mr. Savage's death row sentence, and Mr. Savage is now serving a life sentence.

7.    Defendant DOJ is an agency of the United States government. DOJ is responsible for imposing, renewing, and modifying Mr. Savage's SAMs, including the challenged limitation on contacts approved under those SAMs.

8.    Defendant Pam J. Bondi is the Attorney General of the United States. Under 28 C.F.R. § 501.3, she has decision-making authority over the imposition, modification, and renewal of SAMs, including limitations on contacts for persons incarcerated in BOP facilities, such as Mr. Savage. Ms. Bondi is sued in her official capacity.

9.    Defendant Ashley Dugger is the Director for DOJ's Office of Enforcement Operations ("OEO"). As Director of OEO, Ms. Dugger has authority over whether to recommend

to the Attorney General the imposition, modification, or renewal of the SAMs imposed on Mr. Savage. Ms. Dugger is sued in her official capacity.

10.    Defendant Jennifer A.H. Hodge is a Deputy Assistant Attorney General at DOJ. Ms. Hodge is the signatory of Mr. Savage's SAMs and thus has exercised decision-making authority, delegated by the Attorney General, regarding the imposition, modification, or renewal of those SAMs, including the limitations on Mr. Savage's contacts. Ms. Hodge is sued in her official capacity.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction for claims seeking declaratory and injunctive relief under the APA and the First Amendment to the Constitution pursuant to 28 U.S.C. §§ 1331 and 1343 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12.    Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b)(2). All or most of the ongoing acts, decisions, events, and omissions giving rise to Mr. Savage's claims have occurred and continue to occur in the District of Columbia. The DOJ officials in the District of Columbia made the decisions to limit Mr. Savage's contacts, including the repeated refusals to modify his SAMs to allow additional contacts.

13.    Much like the original procedure for imposing SAMs on Mr. Savage, the annual procedure for renewing Mr. Savage's SAMs, including his limited contact list, involves the following series of decisions by DOJ officials in the District of Columbia. First, based on a request and information received from local federal law enforcement officials in Philadelphia, OEO in the District of Columbia evaluates the propriety of renewing Mr. Savage's SAMs and prepares a "decision memorandum" for submission to the Attorney General or a designee. Next, the Attorney General or a designee in DOJ, also in the District of Columbia, approves the memorandum and renews the SAMs. Thereafter, OEO prepares a memorandum setting forth the specific measures

5

the BOP is directed to enforce against Mr. Savage under the SAMs. Each of these actions and decisions concerning the imposition, modification, and renewal of SAMs occurs at DOJ offices in the District of Columbia.

## PROCEDURAL HISTORY

14.     Mr. Savage filed a complaint challenging the SAMs renewal on April 15, 2021. The complaint sought an injunction requiring the Government to grant his requests to include more individuals in his SAMs or to revisit his requests and apply proper legal standards.

15.     Upon the Government's motion, this Court dismissed without prejudice Mr. Savage's complaint on July 28, 2022. *See Savage v. U.S. DOJ*, No. 21-1057, 2022 WL 2982170 (D.D.C. 2022). This Court found that Mr. Savage failed to exhaust his administrative remedies because he did not follow the procedures under 28 C.F.R. § 501.3(e), which required him to seek review of his SAMs restrictions through the "Administrative Remedy Program" ("ARP"), and he offered no compelling reason for that failure. *Id.* at *21. Mr. Savage completed the first level of review—an informal complaint to prison staff—but did not appeal that grievance. *Id.*

16.     On September 19, 2022, Mr. Savage filed a notice of appeal, seeking review of the decision by the D.C. Circuit Court of Appeals ("D.C. Circuit"). On January 26, 2024, the D.C. Circuit upheld this court's decision. *See Savage v. U.S. DOJ*, No. 22-5240, 91 F.4th 480 (D.C. Cir. 2024). The D.C. Circuit found that Mr. Savage did not exhaust the ARP process, which was "available" to him within the meaning of the Prison Litigation Reform Act of 1995 ("PLRA"). *Id.* at 484–85.

## ADMINISTRATIVE EXHAUSTION

17.     The PLRA, 42 U.S.C. § 1997e, requires an incarcerated person to exhaust "such administrative remedies as are available" prior to bringing a lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(a).

6

18.    The ARP, 28 C.F.R. § 542.13-15, consists of (1) an informal complaint to prison staff, (2) submission of a formal written Administrative Remedy Request directed to the warden, (3) a Regional Administrative Remedy Appeal, and (4) a Central Office Administrative Remedy Appeal.

19.    Mr. Savage has fulfilled the PLRA's requirements by exhausting the ARP process.

20.    Mr. Savage has annually applied to DOJ for the modification of his SAMs to include additional individuals on his contact list by filing a letter with DOJ in advance of the agency renewing his SAMs.  In submitting these annual requests, Mr. Savage's other counsel has sent a letter to the office of the United States Attorney for the Eastern District of Pennsylvania, who then forwards that request to the OEO and other Justice Department officials.

21.    On April 17, 2024, Mr. Savage submitted a request to add nine social contacts to his SAMs:  Tiana Smalls, Tyrone Legree, Trevor Collins, Sekai Douglas, Levan Kelsey, Delzora Bermudez, Teia Jones, Stephanie Savage, and Brenda White.  Two days later, this request was denied.  *See* Exhibit 1 at 1.

22.    On May 10, 2024, Mr. Savage appealed this determination to the warden of ADX Florence.  On June 18, 2024, the appeal was denied.  *Id.* at 2.  Mr. Savage then filed another appeal to the BOP Regional Director of the North Central Regional Office.  *Id.* at 3.  This appeal was denied on October 28, 2024.  *Id.*  Mr. Savage filed a last appeal to the BOP Central Office.  *Id.* at 4.  This appeal was denied on December 19, 2024.  *Id.*

23.    Thus, by completing the four-step ARP process and by receiving a final denial from the BOP Central Office, Mr. Savage has exhausted his administrative remedies.

## FACTUAL BACKGROUND

### A.    Mr. Savage's SAMs and the Limitations on His Contacts

24.    Mr. Savage has been in federal custody since 2004. That year, he was charged in the Eastern District of Pennsylvania with drug trafficking and related crimes and was held in the Federal Detention Center ("FDC") in Philadelphia prior to trial. The following year, he was convicted and sentenced to 30 years' imprisonment. After his conviction, Mr. Savage was imprisoned at the United States Penitentiary ("USP") in Atlanta, Georgia.

25.    While Mr. Savage was awaiting trial in 2004, six family members of a cooperating witness perished in a house fire caused by arson. Two and a half years later, in 2007, based on the Government's determination that Mr. Savage had solicited the arson via telephone calls placed from the FDC in Philadelphia, the Attorney General placed Mr. Savage under SAMs. The BOP then transferred Mr. Savage from USP Atlanta to ADX Florence, the BOP's super-maximum-security prison.

26.    In 2009, Mr. Savage was indicted for murder in aid of racketeering and other offenses in the arson deaths of the cooperator's family and for six other homicides between 1998 and 2004, including one he allegedly solicited from a county jail in Pennsylvania. The Government obtained authorization to seek the death penalty against Mr. Savage. Before and during his capital trial, Mr. Savage remained under SAMs while detained in federal facilities in New York and Philadelphia. In 2013, after Mr. Savage was convicted and sentenced to death, he was returned to ADX Florence. Mr. Savage's death row sentence has since been commuted by President Biden in 2024; however, he will remain at ADX Florence as long as his SAMs are in place.

27.    Because Mr. Savage is subject to SAMs, he is incarcerated in the "Special Security Unit" or "H-Unit" at ADX Florence. There are currently more than 154,000 persons in federal

8

custody, approximately 40 to 50 of whom are subject to SAMs.  Nearly all the prisoners under SAMs are incarcerated in H-Unit at ADX Florence.

28.    Mr. Savage is kept in solitary confinement and has little opportunity to communicate with other incarcerated persons or staff inside ADX Florence.  Like others incarcerated in H-Unit, he spends from 22–24 hours per day locked alone in a cell consisting of 75 square feet of living space.  The cell has thick concrete walls and a solid steel door that prevents Mr. Savage from viewing the interiors of other cells or having direct contact with other incarcerated persons or passing staff.

29.    Mr. Savage's cell contains a single window slit to the outside, through which his only view is a cement yard.  He receives meals through a slot in the door and consumes meals alone inside the cell.  Mr. Savage is never in the physical presence of a guard or other prison staff without full restraints, including handcuffs and leg irons.  His limited "recreation" time occurs either in a small indoor room or an outdoor cage, known as a "dog run" because it resembles an animal kennel.  The cage is surrounded by tall concrete walls and covered on top with thick fencing that obscures any view of the outside.

30.    It is in the context of these conditions of confinement that Defendants, through the SAMs, severely limit Mr. Savage's ability to communicate with anyone *outside* prison.  Until recently, Defendants restricted Mr. Savage's approved contact list to a fixed group of seven social contacts:  his older sister, Conchetta Savage; her two adult children (Mr. Savage's niece and nephew), Yulise and Yusuf; Mr. Savage's three adult children, Kaiion, Kemoni, and Siani; and Siani's mother, Crystal Copeland.[2]  In 2021, Mr. Savage was approved to communicate with a

---

[2]    Mr. Savage's younger sister, Kidada Savage, who was a co-defendant in Mr. Savage's capital case, is not an approved contact under the SAMs.  This complaint does not seek to have her added as a contact under Mr. Savage's SAMs.

religious contact, Imam Muhammad Kolila. In April 2023, Conchetta passed away following a lengthy illness. In April 2024 and following Mr. Savage's first complaint, Mr. Savage's approved contact list was expanded to include Kiyaam Savage, Kyda Savage, and Kathiir Savage, and Mr. Savage's grandnephew, Yusef Savage, Jr. These children are respectively 7, 6, 1, and 2 years old. Only 11 people can visit Mr. Savage or speak to him over the phone. Four of these people are young children. Mr. Savage has never spoken with Imam Kolila, who has not answered Mr. Savage's requests for a consultation, and Mr. Savage rarely speaks to Ms. Copeland, as they no longer share minor children.

31.    Mr. Savage has repeatedly requested that Defendants expand his approved contacts under his SAMs so he can resume relationships with other adult relatives and long-time friends, including the mothers of his children, Kaiion and Kemoni, and establish relationships with in-laws who have joined his extended family, particularly Kaiion's wife, Tiana Smalls. Mr. Savage has also sought to add his nephew Sekai Douglas, the son of Mr. Savage's sister, Kidada Savage, to this SAMs. Defendants have consistently denied those requests. Because the SAMs prohibit Mr. Savage's approved contacts from forwarding mail or sharing information between Mr. Savage and others, Mr. Savage and his relatives and friends have had no contact, and thus no relationship, for almost two decades, ever since Defendants first imposed the SAMs.

32.    Under the SAMs, Mr. Savage cannot have nonlegal telephone calls with anyone other than the eleven individuals listed in the SAMs. These phone calls are limited in H-Unit to two to four per month, must be prearranged, last just 15 minutes each, and must be monitored live by either a BOP Special Investigative Officer at ADX Florence or an FBI agent. Due to these restrictions, Mr. Savage's scheduled calls are often delayed or canceled due to the unavailability of a BOP officer or FBI agent to conduct phone monitoring. The SAMs restrict Mr. Savage's

phone privileges to such an extent that individuals who are not listed in the SAMs cannot even be present when Mr. Savage is speaking with a SAMs approved contact. As a result, relatives of Mr. Savage whom Defendants have refused to add to his list, including young children, must leave the room when an approved family member is speaking with Mr. Savage. Likewise, Ms. Smalls cannot be present if Mr. Savage wishes to speak with her young children who were recently added to the SAMs approved contacts, which greatly inhibits Mr. Savage's ability to communicate with them.

33.    Under the SAMs, Mr. Savage is also prohibited from receiving visits from anyone other than the eleven individuals on his SAMs list. These visits must be prearranged with 14 days' advance written notice and are live-monitored and recorded by an FBI agent and/or BOP officer. Due to the remote location of ADX Florence (several hours from the Denver airport and hundreds of miles away from his approved contacts) and the cost of long-distance travel, Mr. Savage has received only a handful of visits from his approved contacts in the past decade.

34.    Further, the SAMs severely limit Mr. Savage's mail correspondence. He cannot exchange nonlegal mail with anyone other than the eleven individuals on his SAMs list, and that correspondence is limited to three pieces of paper, double-sided, once per calendar week, to a single recipient.[3] Mr. Savage's nonlegal mail is routed through an FBI agent in Philadelphia, who prescreens it prior to that mail being forwarded to the approved contact or Mr. Savage.

35.    Due to his SAMs restrictions, Mr. Savage is treated starkly different from most inmates in the federal prison system. Federal prisoners are generally allowed 500 minutes of

---

[3]    The SAMs also allow Mr. Savage to write to federal judges and prosecutors, members of Congress, the BOP, and federal law enforcement officials. The SAMs were modified in 2020 to allow Mr. Savage to take a correspondence course with a local college. And, as noted, the SAMs were modified in March 2021 to allow Mr. Savage to communicate with an Imam.

telephone time per month, can place calls directly throughout the day, and are permitted to speak with a broad range of contacts.  *See* 85 Fed. Reg. 37,335, 37,336 (June 22, 2020).  Moreover, per BOP policy, but for the SAMs restrictions Mr. Savage would be able to receive visits from a broad range of individuals.

**B.    The Repeated Renewal of the SAMs Restrictions on Mr. Savage's Contacts**

36.    The 2015 version of the SAMs permitted Mr. Savage to have contact with Crystal Copeland, the mother of one of his children, his older sister, his three children, and his nephew and niece, Yusuf and Yulise Savage.

37.    By letter dated October 5, 2015, counsel for Mr. Savage in his prior capital appeal requested that the SAMs be discontinued or modified to include additional friends and relatives, including Ms. Terkessa Bradsher and Ms. Teia Rannels (née Jones) the mothers of Mr. Savage's other two children.

38.    On January 27, 2016, DOJ renewed the SAMs without adding any of the requested contacts.  DOJ provided no justification for its decision beyond reciting events preceding Mr. Savage's conviction and sentence.

39.    By letter dated September 26, 2016, counsel for Mr. Savage again requested that the SAMs be discontinued or modified to include additional family members and friends, including Ms. Bradsher and Ms. Rannels.

40.    On January 18, 2017, DOJ again renewed the SAMs without adding any of the requested contacts and provided no justification for its decision, beyond reciting events preceding Mr. Savage's conviction and sentence.

41.    By letter dated August 3, 2017, counsel for Mr. Savage again requested that the SAMs be discontinued or modified to include additional family members and friends, including Ms. Bradsher and Ms. Rannels.

42.    On January 29, 2018, DOJ again renewed the SAMs without adding any of the requested contacts and provided no justification for its decision, beyond reciting events preceding Mr. Savage's conviction and sentence.

43.    By letter dated December 15, 2018, counsel for Mr. Savage requested that the SAMs be discontinued or modified to include additional family members and friends, including Ms. Bradsher, Ms. Rannels, Mr. Savage's new daughter-in-law, Tiana Smalls, longtime friends Ms. Laverne Bailey, Ms. Brenda White, and Mr. Levon Kelsey, and Mr. Savage's young nephew and his grandson Kiyaam, who had recently been born.  Ms. Bailey and Ms. White have since passed away.

44.    On January 17, 2019, DOJ again renewed the SAMs without adding any of the requested contacts and provided no justification for its decision, beyond reciting events preceding Mr. Savage's conviction and sentence.

45.    By letter dated December 30, 2019, counsel for Mr. Savage again requested that the SAMs be discontinued or modified to include additional family members and friends, including the individuals listed in the December 15, 2018, letter.

46.    On January 23, 2020, DOJ again renewed the SAMs without adding any of the requested contacts and provided no justification for its decision, beyond reciting events preceding Mr. Savage's conviction and sentence.

47.    By letter dated December 11, 2020, counsel for Mr. Savage requested that the SAMs be discontinued or modified to include additional family members and friends, including the individuals identified in the December 30, 2019, letter, as well as his new granddaughter, Kyda, and Ms. Stephanie Keyes, the newlywed wife of Mr. Savage's nephew Yusuf, who is himself an approved contact.

48.    On January 28, 2021, DOJ again renewed the SAMs without adding any of the requested contacts and provided no justification for its decision, beyond reciting events preceding Mr. Savage's conviction and sentence.

49.    On April 30, 2024, DOJ renewed Mr. Savage's SAMs and added three of his grandchildren—Kiyaam Savage, Kyda Savage, and Kathiir Savage—along with his grandnephew, Yusef Savage Jr.  However, DOJ did not add his other contacts and provided no justification for its refusal to do so.

50.    This lack of explanation is typical.  The DOJ has repeatedly renewed Mr. Savage's SAMs *pro forma*, with no analysis of why his request to add individuals to his contact list should continue to be denied.  DOJ has never explained why the passage of time or Mr. Savage's behavior while in BOP custody does not justify increased social contacts.

51.    On information and belief, DOJ annually renews the SAMs based solely on the recommendation of the local United States Attorney and the FBI agent responsible for prosecuting and convicting Mr. Savage.

52.    On information and belief, other individuals incarcerated at ADX Florence who are subject to SAMs—including those convicted of terrorism offenses—have many more approved contacts than Mr. Savage.

C.    **Mr. Savage's Requested SAMs Contacts**

53.    As shown on the list he provided to Defendants, the individuals that Mr. Savage has requested to be added to his SAMs-approved contacts include close family and friends who have no connection to the activities of which Mr. Savage was convicted.  These individuals are as follows:

54.    Ms. Teia Rannels, née Jones, is the mother of Mr. Savage's son, Kaiion.  Ms. Rannels is a nurse who has worked for the Inglis Nursing Facility for two years.  Mr. Savage's

14

and Ms. Rannels' son, Kaiion, has five children, who are Ms. Rannels' and Mr. Savage's grandchildren. Ms. Rannels helped pay for their son, Kaiion, to visit him at ADX Florence. She has no criminal record. She would like to be able to communicate with Mr. Savage to discuss their son Kaiion and their grandchildren.

55.    Ms. Tiana Smalls is the wife of Mr. Savage's son, Kaiion. They were married several years ago while Mr. Savage was at ADX, but she has never been allowed the opportunity to speak or exchange a letter with her father-in-law, Mr. Savage. Ms. Smalls is the assistant director of a daycare with the Your Child and Mine Early Learning Center, her employer of four years. Ms. Smalls and Kaiion Savage have four children, Mr. Savage's grandchildren. She has no criminal record. She would like to get to know Mr. Savage, to share in her husband Kaiion's communications with him, and to speak with him about his grandchildren and facilitate his communication with them.

56.    Ms. Stephanie Keyes or Stephanie Savage is the wife of Mr. Savage's nephew, Yusuf Savage. Ms. Keyes is an operations specialist at Image Studios and holds a BBA from Pennsylvania State University as well as an MBA from Jefferson University. She has no criminal record. She would like to be able to share in her husband's communications with Mr. Savage and to get to know Mr. Savage, who was like a surrogate father to her husband when he was growing up and is someone to whom her husband remains very close.

57.    Mr. Levon Kelsey is a lifelong friend of Mr. Savage and is the godfather to Mr. Savage's nephew, Yusuf Savage. Mr. Kelsey previously lived in the Denver, Colorado, area but has since moved back to Pennsylvania and works as a telecommunications engineer. Mr. Kelsey was in close contact with Mr. Savage prior to his conviction. Mr. Kelsey has no criminal

record other than an approximately 25-year-old conviction for misdemeanor theft of services.  He would like to be able to communicate with Mr. Savage to renew their friendship.

58.    Mr. Tyrone Legree is engaged to Mr. Savage's daughter, Kemoni.  He is an elementary school teacher at Kenderton Elementary School in Philadelphia.  He has no criminal record.  Mr. Savage would like to get to know his future son-in-law.

59.    Mr. Trevor Collins is Mr. Savage's cousin, who he has grown up with since he was a small child.  He currently works as a supervisor at a telecommunications company and has no criminal record.

60.    Mr. Sekai Douglas is Mr. Savage's nephew.  He is a teenager who plays high school basketball in Delaware.  Mr. Savage has never met his nephew, and Mr. Savage would like to establish a relationship with him.

61.    Mr. Delzora Bermudez is Mr. Savage's maternal cousin and childhood friend, who Mr. Savage has known ever since he was a small child.

62.    As detailed above, each of these contacts is either a family member or a close friend of Mr. Savage.  All the requested contacts are gainfully employed, were employed prior to their retirement, or are children.  All but one of the requested contacts have no criminal history, and the one requested contact with a criminal history was convicted of one nonviolent misdemeanor nearly 25 years ago and does not have connections to the crimes of which Mr. Savage was convicted.

63.    Defendants have provided no explanation for their denial of Mr. Savage's requests to modify his SAMs to include the individuals described above.  Given that these individuals are family or close friends without histories of felony criminality or violence, there is no reason for Defendants to prevent Mr. Savage from communicating with them.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of the APA – Arbitrary, Capricious, Contrary-to-Law
### Imposition and Renewal of SAMs
### (against Defendants DOJ and Garland)

64.     Mr. Savage incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

65.     According to 28 C.F.R. § 501.3(a) and (c), SAMs may be imposed or continued on a person in the custody of the BOP only when "there is substantial risk that the person's communications or contacts with persons could result in serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons." The restrictions also must be "reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a).

66.     For years, Mr. Savage's SAMs have stated formulaically that the restrictions, including the contacts limitations, are "reasonably necessary to prevent the inmate from committing, soliciting, or conspiring to commit additional criminal activity" and "are the least restrictive that can be tolerated in light of the ability of this inmate to aid, knowingly or inadvertently, in plans that create a substantial risk that the inmate's communications or contacts with other persons could result in death or serious bodily injury to persons."

67.     Defendants' repeated, formulaic denial of Mr. Savage's requested additional contacts to his SAMs violates the standards set forth in the SAMs, the SAMs regulations, and the renewal of the SAMs.

68.     The individuals Mr. Savage has requested to add to his approved SAMs contacts are family members or close friends who are gainfully employed or are minor children, and they do not have any history of violent criminality. Defendants have not articulated, much less

17

demonstrated, a "substantial risk" that Mr. Savage's communications with the individuals named in his list of requested approved contacts "could result in serious bodily injury" to anyone. Nor can Defendants demonstrate that the SAMs, as currently comprised, are "reasonably necessary" or "the least restrictive measure that can be tolerated" to prevent a risk of death or serious bodily injury.

69.    The APA prohibits decisions by federal administrative agencies that are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or without observance of procedure required by law. 5 U.S.C. § 706(a)(2)(A) & (D).

70.    By repeatedly and formulaically refusing to expand Mr. Savage's severely restricted contact list under his SAMs without considering whether such a restricted list is reasonably necessary to protect persons against the risk of death or serious bodily injury, Defendants have acted and are acting in violation of their own regulations and are thus acting arbitrarily, capriciously, and not in accordance with law, and are abusing their discretion, in violation of the APA.

71.    By repeatedly and formulaically refusing to expand Mr. Savage's severely restricted contact list under his SAMs without considering whether such a restricted list is reasonably necessary to protect persons against the risk of death or serious bodily injury, Defendants are acting without observance of procedure required by law, in violation of the APA.

72.    As a result of Defendants' unlawful conduct, Mr. Savage has suffered and will continue to suffer harm because he has been deprived of contact with family and close friends.

73.    Because of Defendants' unlawful conduct, Mr. Savage is entitled to declaratory and injunctive relief.

**COUNT TWO**
**Violation of the First Amendment – Denial of Right to Free Speech**
**(against all Defendants)**

74.     Mr. Savage incorporates by reference the foregoing paragraphs of this complaint as if set forth fully herein.

75.     By imposing and renewing the SAMs against Mr. Savage without expanding his list of approved contacts, Defendants have prohibited and are continuing to prohibit Mr. Savage from engaging in communications with a wide array of people, including close family members and friends, including nephews, in-laws, and the mother of one of his children.

76.     Because of their repeated, summary rejection of Mr. Savage's requests to expand his list of approved contacts, Defendants are censoring and restricting Mr. Savage's communications to a degree greater than necessary to preserve prison security and public safety or protect against the risk of acts of violence or terrorism.

77.     Incarcerated persons enjoy a right to free speech protected by the First Amendment. A regulation may not impinge on an incarcerated person's right to free speech unless that regulation is reasonably related to legitimate penological interests.

78.     The extreme, unnecessary restriction Defendants continue to impose on Mr. Savage's communications through their repeated, summary rejection of Mr. Savage's requests to expand his list of approved contacts violates Mr. Savage's First Amendment right to free speech.

79.     Defendants' continued infringement of Mr. Savage's First Amendment right to free speech is not reasonably related to any penological interest.

80.     As a result of Defendants' unlawful conduct, Mr. Savage has suffered and will continue to suffer harm because he has been deprived of contact with family and close friends.

81.     Because of Defendants' unlawful conduct, Mr. Savage is entitled to declaratory and injunctive relief.

**COUNT THREE**
**Violation of the First Amendment – Denial of Right to Free Association**
**(against all Defendants)**

82.    Mr. Savage incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

83.    By imposing and renewing the SAMs against Mr. Savage without expanding his list of approved contacts, Defendants have prohibited and are continuing to prohibit Mr. Savage from engaging in communications with a wide array of people, including close family members and friends, including nephews, in-laws, and the mother of one of his children.

84.    Because of their repeated, summary rejection of Mr. Savage's requests to expand his list of approved contacts, Defendants are censoring and restricting Mr. Savage's communications to a degree greater than necessary to preserve prison security and public safety or protect against the risk of acts of violence or terrorism.

85.    Incarcerated persons enjoy a right to free association protected by the First Amendment.  A regulation may not impinge upon an incarcerated person's right to free association unless that regulation is reasonably related to legitimate penological interests.

86.    The extreme restrictions Defendants continue to impose on Mr. Savage's communications, including their repeated, summary rejection of Mr. Savage's request to expand his list of approved contacts, violate Mr. Savage's First Amendment right to free association.

87.    Defendants' continued infringement of Mr. Savage's First Amendment right to free association is not reasonably related to any penological interest.

88.    As a result of Defendants' unlawful conduct, Mr. Savage has suffered and will continue to suffer harm because he has been deprived of contact with family and close friends.

89.    Because of Defendants' unlawful conduct, Mr. Savage is entitled to declaratory and injunctive relief.

**COUNT FOUR**
**Violation of the First Amendment – Deprivation of the Right to Familial Association**
**(against all Defendants)**

90.     Mr. Savage incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

91.     By imposing and renewing the SAMs against Mr. Savage without expanding his list of approved contacts, Defendants have prohibited and are continuing to prohibit Mr. Savage from engaging in communications with a wide array of people, including close family members and friends, including nephews, in-laws, and the mother of one of his children.

92.     Because of their repeated, summary rejection of Mr. Savage's requests to expand his list of approved contacts, Defendants are censoring and restricting Mr. Savage's communications to a degree greater than necessary to preserve prison security and public safety or protect against the risk of acts of violence or terrorism.

93.     Incarcerated persons enjoy a right to associate with family members protected by the First Amendment.  A regulation may not impinge on that right unless it is reasonably related to legitimate penological interests.

94.     Mr. Savage's First Amendment right of familial association extends to the individuals he has repeatedly asked to be added to his contact list, which include his close family members and friends, including nephews, in-laws, and the mother of one of his children.

95.     The extreme restrictions Defendants continue to impose on Mr. Savage's communications, including their repeated, summary rejection of Mr. Savage's request to expand his list of approved contacts to include additional family members, violate Mr. Savage's First Amendment right to familial association.

96.     Defendants' continued infringement of Mr. Savage's First Amendment right to familial association is not reasonably related to any penological interest.

97.     As a result of Defendants' unlawful conduct, Mr. Savage has suffered and will continue to suffer harm because he has been deprived of contact with family and close friends.

98.     Because of Defendants' unlawful conduct, Mr. Savage is entitled to declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Savage respectfully requests that this Court enter judgment in his favor and against Defendants and grant him the following relief:

1.     A declaration that Defendants have violated the APA by acting arbitrarily, capriciously, not in accordance with law, and without observance of procedure required by law.

2.     A declaration that Defendants have violated Mr. Savage's right to free speech, guaranteed by the First Amendment of the United States Constitution.

3.     A declaration that Defendants have violated Mr. Savage's right to free association, guaranteed by the First Amendment of the United States Constitution.

4.     A declaration that Defendants have violated Mr. Savage's right to familial association, guaranteed by the First Amendment of the United States Constitution.

5.     A permanent injunction ordering Defendants to (a) allow Mr. Savage contact with the individuals identified in Section C of this Complaint and (b) prohibit Defendants and their successors from removing any of those individuals from Mr. Savage's list of approved contacts as long as Mr. Savage remains under SAMs, unless it is established that communication with such individual presents a serious risk of death or bodily injury to another person; or in the alternative, a permanent injunction ordering Defendants to faithfully comply with 28 C.F.R. § 501.3 and its implementing procedures as to the SAMs imposed on Mr. Savage by, *inter alia*, requiring Defendants to revisit Mr. Savage's request to expand his SAMs contact list and evaluate any future

requests by Mr. Savage for additional individuals to be added to his contact list using the proper legal standard.

6.    Attorneys' fees and costs.

7.    Any further relief that the Court deems just and proper.

Dated October 14, 2025

Respectfully submitted,

*/s/ Christopher Moran*
CHRISTOPHER N. MORAN (D.C. Bar No. MD0130)
JOSEPH R. HICKS (*pro hac vice* pending)
ALEXANDRA C. KREBS (*pro hac vice* pending)
PATRICK J. BROGAN (*pro hac vice* pending)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, D.C.  20001
Telephone: (202) 344-4741
Facsimile: (202) 344-8300
Email:  CNMoran@Venable.com
          JRHicks@Venable.com
          ACKrebs@Venable.com
          PJBrogan@Venable.com

*Attorneys for Plaintiff Kaboni Savage*